IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JARVIS POSTLEWAITE** )<br>    Plaintiff,          )<br>                         )<br>vs.                      )<br>                         )  CIVIL No.  14-cv-1365-MJR-SCW<br>**JOHN COE and**         )<br>**DENSMORE**             )<br>                         )<br>    Defendant.        )<br>                         )<br>                         ) | |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### Introduction and Procedural Background

Pro se Plaintiff Jarvis Postlewaite, currently incarcerated at Pontiac Correctional Center, filed this case on December 10, 2014 alleging that his constitutional rights were violated when Defendant John Coe denied him a tomato-free diet while Plaintiff was incarcerated at Lawrence Correctional Center.  (Doc. 1).   The threshold order agreed and found that Plaintiff had stated a claim against Coe and severed that claim from other unrelated claims into this case.  (Doc. 1).   Prior to referral, Plaintiff filed an amended complaint naming dietary supervisor Densmore as well, (Doc. 4), which now controls here.  (Doc. 9).  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule

1

72.1(a) for a Report and Recommendation on whether Postlewaite exhausted his administrative remedies before filing suit. For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Coe's Motion, (Doc. 42), and **DENY** Densmore's Motion. (Doc. 47).

Defendant Coe filed his motion on May 27, 2015. (Doc. 42). Plaintiff filed a response to this motion on June 8, 2015. (Doc. 51). Defendant Densmore filed his Motion on June 1, 2015. (Doc. 47). Plaintiff filed a response to this motion on June 24, 2015. The undersigned held a hearing on this matter on November 13, 2015. (Doc. 60). Plaintiff appeared for himself. Eric Bulman appeared for Defendant Densmore. Alexander Chosid appeared for Dr. Coe. Plaintiff provided testimony. Additionally, at the hearing, Coe provided an exhibit which had not previously been submitted to the Court. The Court ordered Coe to provide that exhibit to Plaintiff, and it can be found in the record at Doc. 68.

### LEGAL STANDARDS

1. **Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any

genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).**

When a motion for summary judgment is made with respect to *Pavey*, the first step in the sequence, as set out by Judge Posner, is for the judge to hold a hearing on the issue of exhaustion. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** A case can only move onto the merits after such exhaustion issues have been decided. *Id.* When "factual issues relating to the defense of failure to exhaust administrative remedies," are up for consideration, these will be decided by a judge. *Id.* **at 740-41.**

2. PLRA's Exhaustion Requirement

Suits brought by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. PLRA requires a prisoner to first exhaust all administrative remedies available before bringing an action concerning prison conditions. **42 U.S.C. § 1997e(a).** The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones v. Bock*, **549 U.S. 199, 218 (2007).** Unexhausted claims may not be brought to court. *Jones*, **549 U.S. at 211 (citing** *Porter v. Nussell*, **534 U.S. 516, 524 (2002)).**

The Seventh Circuit requires strict compliance in regards to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the

3

place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court will not consider the grievance. *Pavey*, **663 F.3d at 903.**

The purpose of the exhaustion requirement is two-fold. *McCarthy v. Madigan*, **503 U.S. 140, 145 (1992).** First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524;** *see Booth v. Churner*, **532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process and may not file in anticipation that administrative remedies will soon be exhausted. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C § 1997e(a));** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. *Perez*, **182 F.3d at 535.**

3. **Exhaustion Requirement under Illinois Law**

Inmates confined in the Illinois Department of Corrections must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. **20 Ill. Admin. Code § 504.810.** The prisoner must first speak with their Counselor about the issues they raise, and if the dispute is not

resolved, the grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. **20 Ill. Admin. Code § 504.810(a).** The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("Warden"). **20 Ill. Adm. Code § 504.830(d)**. The prisoner then has the opportunity to review the Warden's response, and if he is unsatisfied, he may appeal to the Director through the Administrative Review Board ("ARB") within 30 days of the Warden's response. **20 Ill. Adm. Code § 504.830(d)**; **20 Ill. Adm. Code § 504.850**. The ARB is then required to provide a written report to the Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.850(e), (f).**

Alternatively, a prisoner "may request a grievance by handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." **20 Ill. Adm. Code § 504.840**. The CAO must make a determination whether the grievance shall be handled on an emergency basis. **20 Ill. Adm. Code § 504.840**. If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what

action shall be or has been taken." **20 Ill. Adm. Code § 504.840**. Once the CAO has informed the grieving inmate of its decision, the inmate may then appeal that decision to the Administrative Review Board ("ARB") on an expedited basis. **20 Ill. Admin. Code § 504.850(g)**. A final decision of the ARB will exhaust the grievance requirement.

### FINDINGS OF FACT

Plaintiff filed suit on October 3, 2014. (Doc. 2). The claim was split into its own case pursuant to *George v. Smith*. (Doc. 1). Plaintiff filed an amended complaint on December 24, 2014. (Doc. 4). In his Amended Complaint, Plaintiff alleged that he arrived at Lawrence Correctional Center on November 6, 2013. (Doc. 4, p. 4). Plaintiff alleged that his medical records reflected his tomato allergy, but that he was denied a tomato free diet by Densmore. (Doc. 4, p. 4). Densmore told Plaintiff he would have to get medical to prescribe him a special diet. (Doc. 4, p. 4). When Plaintiff saw Coe, Coe told Plaintiff just to eat around tomatoes. (Doc. 4, p. 4). Plaintiff then went without his proper tray for three months. (Doc. 4, p. 4). He then commenced a hunger strike. (Doc. 4, p. 4). Phil Martin and Warden Duncan then directed Coe to provide Plaintiff with a tomato free diet so that he would end his hunger strike. (Doc. 4, p. 4). Coe wrote Plaintiff a therapeutic diet order on February 5, 2014. (Doc. 46-3, p. 1). The order specified that Plaintiff was not to receive tomatoes or tomato by-products and the duration is listed as indefinite. (Doc. 46-3, p. 1).

Defendant Densmore submitted an affidavit from Thomas Keen stating that he works for the ARB, and that the ARB did not receive a grievance regarding Plaintiff's tomato diet during the relevant time period. (Doc. 48-1, p. 3). Densmore also attached a

copy of Plaintiff's IGRV inmate history through June 2015, which shows no copies of any dietary grievances. (Doc. 48-2).

Coe submitted a copy of a grievance dated February 25, 2014. (Doc. 46-1, p. 1). That grievance addresses the fact that, due to his no-tomato diet, Plaintiff frequently receives trays that have less than the full amount of food because portions containing tomatoes have been removed and replaced with a less than adequate substitute, i.e. a meat dish containing tomatoes has been replaced with applesauce. (Doc. 46-1, p. 2). The grievance does not mention any IDOC employees by name, and complains specifically about those in charge of the dietary trays. (Doc. 46-1, p. 2). The CAO received this grievance on March 19, 2014 and denied that the grievance presented an emergency issue on that same day. (Doc. 46-1, p. 1).

Plaintiff's response includes a grievance dated March 20, 2014. (Doc. 58, p. 15). Plaintiff indicated that the March 20 grievance is identical to the February 2014 grievance because he re-submitted the February 2014 grievance through normal channels after it was rejected as an emergency. (Doc. 58-1, p. 1). This grievance repeats Plaintiff's complaints about his portions and substitutions. (Doc. 58, p. 15-16). It does not identify any person by name, and states that the dietary supervisor and staff are taking out their frustration out on Plaintiff for making their line slow. (Doc. 58, p. 16). Plaintiff's counselor received this grievance on March 25, 2014 and returned it to Plaintiff on April 2, 2014. (Doc. 58, p. 16). The grievance officer then received a copy on April 10, 2014. (Doc. 58, p. 16). The grievance officer reviewed the grievance on June 24, 2014 and the CAO signed off on it on July 3, 2014. (Doc. 58, p. 16). Plaintiff did not

7

sign the grievance indicating that he was filing an appeal and there is no further paperwork regarding this grievance in the record. Plaintiff testified at the hearing that he mailed this grievance to the ARB and never got a response. He believes he sent the grievance to the ARB between July 4 and July 15, 2014. (Doc. 58-1, p. 1).

Dr. Coe also submitted a copy of the IGRV summary, but his copy appears to be from a later period in time and includes a dietary grievance, No. 12-14-44 that addresses Plaintiff's claims that he is getting nutritionally inadequate trays. (Doc. 46-2, p. 1). At the hearing, Coe submitted a copy of grievance No. 12-14-44 and represented to the Court that the grievance was still being processed by the ARB at the time of the hearing. (Doc. 70).[1] The grievance indicates that it was filed on November 11, 2014 and received by the counselor on November 19, 2014. (Doc. 70). The counselor returned it to Plaintiff on December 5, 2014. (Doc. 70). The grievance officer received it on December 11, 2014 and returned it with the CAO's signature on March 11, 2015. (Doc. 70). Plaintiff appealed the grievance on March 19, 2015. (Doc. 70).

## ANALYSIS

### 1. Dr. Coe

Plaintiffs are not required to specifically "name" defendants in their grievances. *See Maddox v. Love*, **655 F.3d 709, 713 (7th Cir. 2011) (finding that failure to name a specific defendant is merely a technical defect if it has no effect on the administrative process or exhaustion requirements and if it would not be difficult to identify a particular official through other means)**. However, plaintiffs are required to provide

---

[1] This grievance cannot serve as a basis for exhaustion because it was still in progress at the time Plaintiff filed suit.

enough information so that the prison may take corrective action to address the problem. Here, Plaintiff did not adequately name Coe in any of his relevant grievances. Plaintiff points to his February and March 2014 grievances in support of his claim that he exhausted his administrative remedies. But neither of those grievances address the conduct that Plaintiff ascribes to Coe in his Complaint—namely the denial of a therapeutic diet order for three months. Instead, they address conduct of other prison employees after the time the therapeutic diet order was issued. Plaintiff's point in the February and March 2014 grievances is that the therapeutic diet order is being enforced in such a way as to deprive him of a full food tray. There is nothing about Plaintiff's medical care in those grievances, nor do the grievances refer to any of the allegations against Coe.

     Plaintiff argues that he should have been excused from grieving Coe's conduct because he was on hunger strike and thus both deprived of writing materials and not thinking clearly. But Plaintiff alleges that he was only on hunger strike for two weeks, whereas he complains that Coe deprived him of his therapeutic diet for three months. Plaintiff has no explanation about why he did not grieve during the time that he was not getting his diet and not on hunger strike, which taking his allegations as true, amounted to a 10 week period. Additionally, Plaintiff could have grieved the denial of the therapeutic diet for up to two months after the order giving him the diet was written. He did not do so. A two-week hunger strike does not make the grievance process unavailable where the time to file the grievance continued for nearly two months after the hunger strike ended. For the above reasons, the undersigned

9

**RECOMMENDS** that the Court **GRANT** Coe's Motion for Summary Judgment. (Doc. 42).

2. **Densmore**

Whether Plaintiff has exhausted his remedies as to Densmore turns on whether the Court credits Plaintiff's testimony that he submitted the March 2014 grievance to the ARB. Plaintiff testified that he did so at the hearing. There is also evidence that Plaintiff is familiar with the grievance process and that he had submitted other grievances to the ARB. It is not logical that Plaintiff would not pursue this grievance after receiving it back from the CAO when he has done so with other grievances. The undersigned found Plaintiff's testimony at the hearing credible. For that reason, the undersigned **RECOMMENDS** that the Court **DENY** Densmore's Motion for Summary Judgment. (Doc. 47).

CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant Coe's Motion for Summary Judgment by **GRANTED**. (Doc. 42). It is further **RECOMMENDED** that Defendant Densmore's Motion for Summary Judgment (Doc. 47) be **DENIED**. If this Report is adopted, then Plaintiff's claim against Defendant Densmore will proceed.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). <u>Objections to this Report and</u>

**Recommendation must be filed on or before December 7, 2015.**  See FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

IT IS SO ORDERED.

DATED: November 18, 2015

s/     *Stephen C. Williams*
**Stephen C. Williams**
United States Magistrate Judge